# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JENNIFER GONZALES,[1]

    **Plaintiff,**

    **v.**                                     **Case No. 21-CV-645-SCD**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Plaintiff Jennifer Gonzales applied for Social Security disability benefits based on psychological symptoms related to her attention deficit hyperactivity disorder (ADHD) and depression. Gonzales filed a claim for disability benefits, which was denied initially on December 17, 2015, and on reconsideration on June 1, 2016. *See* R. 91-94, 99-103. The ALJ dismissed Gonzales' claim for a failure to appear to a hearing, but the Appeals Council (AC) reversed and found that she had a good reason for not appearing. *See* 205-210. At a new hearing before the ALJ on October 7, 2020, Gonzales had the opportunity to present her case to an ALJ. *See* R. 16-28. The ALJ determined that Gonzales' difficulties with concentrating were not as severe as alleged, and that she would still be able to perform her past relevant work. Accordingly, the ALJ found that Gonzales was not disabled, and the AC affirmed. *See* R. 13-35, 1-6.

Gonzales now seeks judicial review of the ALJ's decision because she believes that the

---

[1] Gonzales' name appears to be misspelled in the original complaint ("Gonzalez"). Her application and medical records reflect that her name is spelled "Gonzales."

ALJ did not sufficiently explain the residual functional capacity assessment. Additionally, Gonzales argues that if the ALJ did err in creating the RFC, she also committed reversible error in relying on the vocational expert's (VE) testimony regarding the number of alternative jobs available that she could perform. Finally, Gonzales argues that she is entitled to a new hearing because the structure for removing the Commissioner of the Social Security Administration (SSA) violates the United States Constitution.[2] Kilolo Kijakazi, the Acting Commissioner of the SSA, maintains that the ALJ did not commit reversible error in denying Gonzales' claim, substantial evidence supports the ALJ's decision, and Gonzales is not entitled to relief on her constitutional claim. I agree with Kijakazi on each point; thus, I will affirm the denial of disability benefits.

## BACKGROUND

Jennifer Gonzales was born on January 4, 1978. She stopped attending school after the sixth grade and later completed her GED. R. 41, 42. At the time of the hearing, she lived in a house in Green Bay with her four children. R. 42. Gonzales has alleged disability since January 2014. R. 43. Her past relevant work prior to the alleged onset of disability includes assembling packing soap dispensers, which the VE later classified as a hand packager. R. 42,

---

[2] Gonzales concedes that her argument has been rejected by nearly every district court to have considered it; she presents it here to preserve the issue on appeal. *See* ECF No. 21 at 17 (collecting cases). Indeed, I have rejected the same argument at least six times in the last six months. *See Robinson v. Kijakazi*, No. 21-CV-238-SCD, 2022 WL 443923, 2022 U.S. Dist. LEXIS 25681 (E.D. Wis. Feb. 14, 2022); *Timm v. Kijakazi*, No. 21-CV-131-SCD, 2022 WL 843920, 2022 U.S. Dist. LEXIS 50594 (E.D. Wis. Mar. 21, 2022); *Swiecichowski v. Kijakazi*, No. 21-CV-249-SCD, 2022 WL 2069251, 2022 U.S. Dist. LEXIS 104593 (E.D. Wis. May 27, 2022); Decision & Order, *Metoxen v. Kijakazi*, No. 21-CV-341-SCD (E.D. Wis. June 21, 2022); *Everson v. Kijakazi*, No. 21-CV-716-SCD, 2022 WL 3656462, U.S. Dist. LEXIS 152810 (E.D. Wis. Aug. 25, 2022); *Tallar v. Kijakazi*; 21-cv-611-SCD (E.D. Wis. Aug. 30, 2022). Gonzales' argument fails for the same reasons the argument failed in those cases—namely, that there is no causal connection between her adverse decision and the SSA's unconstitutional structure. *See, e.g.*, *Robinson*, 2022 U.S. Dist. LEXIS 25681, at *12–19. Accordingly, she is not entitled to relief on her constitutional claim.

52. Gonzales reported some work after that, including occasionally babysitting and working as a bartender for just several days. R. 44. She also briefly worked as a server but was dismissed for not following directions and having a bad attitude. R. 44-45. She quit a second job as a server after a few days because she walked out after having an emotional breakdown. R. 45.

During the hearing before the ALJ, Gonzales testified about her past job history and why she was unable to work. She testified that she had a hard time focusing and managing her mood swings. R. 45. Gonzales said that she experienced racing thoughts that prevented her from focusing when watching a TV show or reading a newspaper. R. 46. Gonzales said that she could drive only once or twice a month because she would get extremely frustrated with other drivers. R. 47. She claimed to experience crying spells approximately eight days a month, with the episodes occurring on and off all day. R. 48. Gonzales testified that she lost her babysitting job due to oversleeping and generally being unable to adhere to a schedule. R. 49. She claimed that she had a hard time getting out of bed at least twenty days per month, and that she had at least one day each week when she did not get out of bed at all. R. 49-50. Gonzales also testified that she slept poorly and would sleep anywhere from four hours a day to twenty hours a day. R. 51. Gonzales testified that she experienced emotional outbursts that resulted in someone asking her to leave social functions and supervisors reprimanding her at work. R. 51-52.

The ALJ then heard testimony from the VE. The VE indicated that someone of the same age, education, and vocational background would be able to perform Gonzales' past work as a hand packager if she had the same RFC the ALJ ultimately assigned to Gonzales. R. 53. He further testified that the individual would also be able to work in a number of other

3

jobs available in significant numbers in the national economy, such as a housekeeping cleaner, a marker, and a hospital cleaner. R. 53-53. The VE stated that the job numbers he cited came from the Job Browser Pro product by SkillTRAN, a widely accepted and reliable source of job numbers in his field. R. 56. Gonzales' attorney asked the VE about the methodology behind the Job Browser Pro product. The VE indicated that SkillTRAN aggregated the numbers from government agencies. R. 58. He explained that the base numbers were broken into categories corresponding to the individual DOT codes. *Id*. He also stated that he had not conducted a personal study into the accuracy of those numbers. R. 58-59.

20 C.F.R. § 404.1520(a)(4) outlines a five-step process under which an ALJ must evaluate a disability benefits claim. Here, the ALJ found at step one that Gonzales had not engaged in substantial gainful activity since the alleged onset date. R. 18. At step two, the ALJ determined that Gonzales had two severe impairments: major depressive disorder and ADHD. *Id*. At step three, the ALJ found that Gonzales did not have any impairment or combination of impairments that meets or medically equals the severity of one of the listings. *Id*. In determining that Gonzales' mental health conditions were non-disabling, the ALJ considered her limitations in the paragraph B criteria. The ALJ found that Gonzales had a mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing herself. R. 20.

The ALJ then described Gonzales' RFC. She said that Gonzales could "perform a full range of work at all exertional levels." R. 22. In describing Gonzales' mental limitations, the ALJ first stated that "[Gonzales] is able to understand, remember, and carry out simple instructions, consistent with unskilled work." *Id*. She said that Gonzales could maintain

concentration, persistence, and pace for two-hour intervals over an eight-hour day with routine breaks. *Id.* The ALJ also found that Gonzales could "work in a low stress job, defined as one that requires only occasional work-related decisions and involves only occasional changes in the work setting." *Id.* She limited Gonzales to only occasional interaction with supervisors and coworkers, and she barred Gonzales from performing tandem tasks that require coordination with co-workers. *Id.* The ALJ also found that Gonzales could work in proximity to the public and have brief interaction with the public." *Id.* In familiar parlance, the ALJ found that while Gonzales' conditions could reasonably be expected to cause her reported symptoms, her statements regarding the severity of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 22-23.

In reaching this conclusion, the ALJ considered Gonzales' reported symptoms, including emotional problems, difficulty being around people, getting bored easily, difficulty staying focused, lack of motivation, mood swings, and fatigue. R. 22. She also considered Gonzales' reports that she still prepared simple meals, performed household chores, drove, cared for her children and pets, went shopping, managed her finances, and spent time with family. *Id.* Finally, she considered the medical evidence, which the ALJ stated "simply do[es] not reflect the degree of limitations alleged by the claimant." *Id.* She went on to explain that "the longitudinal record supports that no additional limitations are needed" because her care providers consistently observed her as being cooperative, behaving normally, demonstrating normal thought processes and content, having adequate memory, having adequate attention span, and having fair insight and judgment. R. 23. The ALJ observed that, despite her impairments, Gonzales engaged a normal level of daily activity and interaction, including preparing meals, doing chores, caring for her children and pets, driving, spending time with

family, and taking her kids to school and the park. *Id.* The ALJ concluded that "the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." R. 24.

Additionally, the ALJ looked at Gonzales' work history to determine the extent of her impairments. She noted that Gonzales' past job as a bartender suggested she didn't have difficulty interacting with others or a need for isolation in a work setting. *Id.* When she was terminated from one of those bartending jobs, it was not related to her mental health conditions, but rather a consequence of drinking on the job. *Id.* The ALJ also offers an alternative reason that could explain Gonzales' lack of a work history, namely that she struggled to find a job because of her theft record. *Id.*

The ALJ also considered the reports of the state agency psychological consultants, who both found Gonzales to be capable of unskilled work. She stated that she gave their opinions only "some weight" because even though the medical record supported some of their findings, the ALJ did not believe that the consultants adequately considered Gonzales' problems adapting to change and interacting with others. *Id.*

The ALJ summarizes her explanation of the RFC by specifically identifying the RFC limitations corresponding with each paragraph B finding. The ALJ accommodated Gonzales' moderate limitations in concentration, persistence, and pace by limiting her to simple tasks and maintaining concentration for two-hour segments. *Id.* The ALJ accommodated Gonzales' moderate limitations in social interactions by restricting her to only occasional interaction with supervisors, coworkers, and the public. *Id.* And the ALJ accommodated Gonzales' moderate limitations in adapting and managing herself by limiting her exposure to stress, decision-making, and workplace changes. *Id.*

Having defined Gonzales' RFC, the ALJ then went on to find at step four that Gonzales *could* perform her past relevant work as a hand packager. R. 25. In doing so, the ALJ relied on the VE's testimony that a person with Gonzales' RFC, age, education, and work experience could still work as a hand packager, as generally and actually performed. R. 26. The ALJ further found that, even if Gonzales could not perform past work, there were jobs available in significant numbers that Gonzales could perform. *Id*.

After she completed the five-step analysis, the ALJ addressed the objection Gonzales' lawyer raised to the VE's testimony. Gonzales' lawyer objected to the VE's use of the Job Browser Pro product as a method of calculating job numbers. R. 27. He argued then, as he does now, that because the VE was unable to explain the way in which Job Browser Pro aggregated its statistics, his reports were not based on a reliable methodology. *See id*.; *see also* ECF No. 21 at 15. The ALJ overruled the objection. She first acknowledged that the SSA and courts have accepted statistics from government agencies like the Bureau of Labor as reliable, and because the job numbers in Job Browser Pro are from these agencies, many courts have accepted these numbers without further inquiry. R. 27. She went on to say that the VE testified that experts in his field widely considered Job Browser Pro to be a reliable source. *Id*. The ALJ then concluded her opinion by restating that Gonzales was not disabled under the Social Security rules. R. 27-28.

The AC denied Gonzales' request for review on April 2, 2021, *see* R. 1-6, making the ALJ's decision a final decision of the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On May 24, 2021, Gonzales filed this action seeking judicial review of the decision denying her claim for disability benefits under 42 U.S.C. § 405(g). *See* ECF No. 1. Her case

was assigned to Judge Stadtmueller, who reassigned it to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF No. 4, 6. Gonzales filed a brief in support of her disability claim, ECF No. 21; Kijakazi filed a brief in support of the ALJ's decision, ECF No. 26; and Gonzales filed a reply brief, ECF No. 29.

## APPLICABLE LEGAL STANDARDS

Under 42 U.S.C. § 405(g), a claimant may seek judicial review of a final administrative decision of the Social Security Commissioner. In such a case, a judge has the power to affirm, reverse, or modify the Commissioner's final decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991). The court can remand a matter to the Commissioner in two ways: it may remand "in conjunction with a judgment affirming, modifying, or reversing the [Commissioner's] decision," or it "may remand in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner's] decision." *Melkonyan*, 501 U.S. at 99–100. Here, Gonzales seeks remand in conjunction with a decision reversing the Commissioner's decision. ECF No. 21 at 1.

The court will reverse the Commissioner's final decision only if the denial of disability benefits is "based on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Substantial evidence simply means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The court "may not re-weigh the evidence or substitute its own judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). It is limited to

evaluating whether the ALJ has built an "accurate and logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Gonzales argues that the ALJ's decision should be reversed for three reasons. First, she argues that the ALJ erred in determining her RFC. Second, she argues that the VE's estimation of the number of jobs available was based on an unreliable method of calculation. Finally, Gonzales argues that the decision should be reversed because the Commissioner holds her office on an unconstitutional basis and, as such, no ALJ in her administration has the authority to act on Gonzales' claim. I find that the ALJ did not err in determining Gonzales' RFC, that any error in the VE's testimony was harmless, and that Gonzales is not entitled to relief on her constitutional claim.

### I. The ALJ Did Not Err in Determining Gonzales' RFC.

Gonzales argues that the ALJ erred in three ways in determining her RFC: the ALJ did not explain which evidence supported each element of the RFC; the ALJ's step-three findings were inconsistent with the RFC; and the ALJ gave weight to the state psychologists' opinions, which were internally contradictory.[3] I disagree, and I find that substantial evidence supported the ALJ's findings.

Substantial evidence is not a high bar. It is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martin*, 950 F.3d at 373. Likewise, the ALJ's duty to build an accurate and logical bridge between the evidence and the result is

---

[3] Gonzales suggests that these are three separate arguments, but they are inextricably linked. Gonzales argues that the ALJ did not properly explain which evidence supported specific limitations, which included her failure to translate section-three findings into the RFC and her supposed reliance on the state psychologists' inconsistent findings. As such, the arguments will be addressed together.

not an overly exacting task; the ALJ simply "must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In evaluating the persuasive value of the evidence, an ALJ must only "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

Contrary to Gonzales' arguments, the ALJ did not just summarize the evidence; rather, she carefully categorized the evidence as persuasive or unpersuasive and explained the reasoning behind that categorization. The ALJ found that Gonzales' conditions did not require a more restrictive RFC given the records from Gonzales' treating doctor and Gonzales' testimony regarding her daily activities. She was not persuaded by Gonzales' own testimony that her symptoms prevented her from working because that testimony contradicted the medical evidence, and there were other logical explanations for Gonzales' inability to find and keep a job.

The RFC provided the following limitations: Gonzales (1) can carry out simple instructions consistent with unskilled work; (2) can maintain attention and concentration for two-hour segments; (3) can work in a low-stress job with only occasional changes in the work setting; (4) is occasionally able to interact with supervisors and coworkers; and (5) is able to work in proximity to the public and have brief interactions with the public. R. 23. The ALJ did not include any additional limitations because Gonzales' care providers reported normal behavior, normal thought content, adequate memory, organized thought process, adequate attention span, and fair insight and judgment. *Id*. (citing various treatment records). The ALJ found that Gonzales' testimony regarding her daily activities like performing chores, preparing meals, driving, caring for her children, shopping, and managing finances also

demonstrated that Gonzales' symptoms did not interfere with her ability. The ALJ reasoned that because Gonzales could engage in those activities, she could also work because "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." R. 24. The ALJ also found Gonzales' testimony that she had difficulty interacting with others conflicted with Gonzales' history working as a bartender, which the ALJ noted requires heavy social interaction. R. 25. The ALJ also disbelieved Gonzales's testimony that her difficulties concentrating were debilitating because medical tests reflected that she did not consistently take Adderall as prescribed, which likely would have improved her concentration. *Id*.

After describing the persuasive value of specific pieces of evidence, the ALJ specifically listed which RFC restrictions accounted for particular assessed limitations. The ALJ addressed Gonzales' moderate concentration, persistence, and pace limitations by limiting her to simple tasks, giving her routine breaks, and limiting her to two-hour segments of concentration. R. 26. The ALJ addressed Gonzales' moderate difficulty with social interaction by limiting her interaction with supervisors, coworkers, and the public. *Id*. And the ALJ addressed Gonzales' moderate difficulty with adaptation or self-management with limitations on exposure to stress, decision-making responsibilities, and the degree of change in the workplace. *Id*. I fail to see how the ALJ failed to build a logical bridge between the RFC and the limitations supported by the medical record.

Gonzales argues that the ALJ must be more specific with her findings and show "[w]hat evidence supported the limitation that Gonzales could function with coworkers and supervisors . . .up to 1/3 of the day"[4] and "[w]hat supported the finding that Gonzales could

---

[4] The ALJ said that Gonzales could interact with supervisors and coworkers "occasionally," which social security rulings define as "occurring from very little up to one-third of the time." Social Security Ruling (SSR)

maintain attention and concentration for two-hour segments." ECF No. 21 at 15. However, the ALJ already explained that she was convinced the record, including doctors' reports that Gonzales had adequate attention and Gonzales' testimony regarding her daily activities, showed Gonzales did not require further limitations. It is Gonzales' burden to show that she has medical impairments that interfere with her ability to work, not the ALJ's. *Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018). Here, Gonzales provides no evidence that she is unable to focus for two-hour time periods or unable to interact with others for up to one-third of the day. Accordingly, I find that the ALJ sufficiently explained why she credited certain evidence above other evidence, and she built a logical bridge from that evidence to the RFC limitations.

Next, Gonzales argues that the ALJ should not have given the state psychologists' opinions any weight because they were internally inconsistent. The state psychologists found that Gonzales is "capable of performing the basic mental demands of unskilled work," which would include maintaining attention and concentration for two-hour segments according to POMS DI 25020.010B.3, but also said that she was moderately limited in concentration, persistence and pace. *See* R. 24, 68, 79. Giving these opinions even "some weight" when they are internally contradictory, as the ALJ did, constitutes reversible error in Gonzales' opinion.

Gonzales' assessment of this issue is incorrect for two reasons. First, the findings Gonzales takes issue with within these opinions are not inconsistent. While Gonzales is correct that someone capable of performing the "basic mental demands of unskilled work" must be able to maintain attention for extended periods of two-hour segments, finding that a claimant can maintain attention for two-hour segments does not inherently contradict a

---

83-10, Titles II and XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix 2, 1983 WL 31251, 1983 SSR LEXIS 30 (1983).

finding of moderate CPP limitations. Gonzales does not provide any evidence, legal or anecdotal, suggesting that a person with moderate CPP limitations is categorically barred from all work that requires attention for two-hour segments. For example, in *Pavlicek v. Saul*, 994 F.3d 777, 780 (7th Cir. 2021), two non-examining agency consultants reviewed the plaintiff's records and determined he had moderate limitations in CPP, but could still remember basic information and simple instructions, pay attention for up to two hours at a time, and perform at a consistent pace if engaged in simple, repetitive tasks. As such, these findings are not actually contradictory.

Second, regardless of the ALJ's statement that she gave the opinion "some weight," the record reflects that the ALJ found Gonzales to be significantly more limited than the psychologists did. In this way, giving any weight to the psychologists' opinions is at most harmless error because Gonzales' RFC was much more restrictive than any aspects of the allegedly inconsistent findings. The ALJ did not rely only on the psychologists' opinions. She also relied heavily on Gonzales' treating doctors' opinions, none of whom opined that she was incapable of focusing for two-hour segments. "When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *See Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (quoting *Rice*, 384 F.3d at 370). Because the RFC imposed greater limitations on Gonzales than any medical source found necessary, the ALJ did not err.[5]

---

[5] Gonzales argues that finding no error as long as the RFC is more restrictive than any medical opinion would permit limiting a claimant with an MRI showing "nerve root contact and a herniated disc, subsequent a subsequent fusion, and a finding of 'failed back syndrome'" to light exertional work with a need to change positions every two hours, so long as the state agency only found that this claimant could do light exertional work (with no need to change positions). *See* ECF No. 29 at 10. This slippery-slope argument has no foundation in reality. For one, if an MRI truly showed such conditions, it would be hard to believe that any state agency consultant would find that such a claimant could do light exertional work; they would find the claimant to have far more restrictions. Furthermore, in this hypothetical, there is *objective medical evidence* in the form of an MRI

Each of Gonzales' arguments related to the RFC essentially states that the ALJ did not adequately explain herself and why she included the limitations that she did. However, the ALJ properly explained why she believed the medical evidence and Gonzales' testimony regarding her daily activities did not support that Gonzales' conditions were as severe as she alleged. As such, the ALJ had substantial evidence on which to base her findings, and she did not err in determining Gonzales' RFC.

## II.  Any Error the VE Committed in Assessing Job Numbers was Harmless.

At most, the ALJ's reliance on the VE's estimate of job numbers is harmless error. An error is harmless if the court is convinced that the ALJ would reach the same result on remand. *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). The finding that Gonzales would be able to work in several jobs in significant numbers in the national economy was an alternative finding to the ALJ's finding that Gonzales could work in her old job as a hand packager. Because the ALJ did not need to rely on the VE's job number estimate to find Gonzales non-disabled at step four, the reliability of those numbers is immaterial. Moreover, the VE did explain the methodology behind his estimates and indicated that the methodology was widely accepted as reliable in his field. R. 56.

## CONCLUSION

For all of the reasons explained above, I find that (1) Gonzales has not demonstrated that the ALJ committed reversible error in assessing her RFC; (2) substantial evidence supported the ALJ's decision; and (3) Gonzales is not entitled to relief on her constitutional

---

that clearly demonstrates severely disabling symptoms. That is not the case here, where no doctor and no medical evidence demonstrates that Gonzales' conditions are as severe as alleged.

claim. Thus, I **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

      **SO ORDERED** this 28th day of September, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge